IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| **WILLIAM ALLEN DARR, JR.,** ) | | |
| Plaintiff, ) | | Civil Action No. 7:23cv00298 |
| ) | | |
| v. ) | | **MEMORANDUM OPINION** |
| ) | | |
| **C/O R. STOUT, et al.,** ) | | By: Hon. Pamela Meade Sargent |
| Defendants. ) | | United States Magistrate Judge |

Plaintiff, William Allen Darr, Jr., ("Darr"), a Virginia inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983 against Correctional Officer R. Stout, ("Stout"), Harold W. Clarke, ("Clarke"), and Warden Phillip White, ("White"), alleging violations of his rights under the Eighth and Fourteenth Amendments. The case was transferred to the undersigned magistrate judge upon the consent of the parties, pursuant to 28 U.S.C. § 636(c)(1). The case is before the court on the defendants' motion to dismiss, (Docket Item No. 10) ("Motion"). For the reasons stated below, the Motion will be granted in part and denied in part.

I.      Factual Background

In his Complaint, (Docket Item No. 1), Darr alleges that on February 5, 2022, Stout slammed his arm in the tray slot of his cell door at Augusta Correctional Center ("Augusta"), causing severe pain. Darr alleges that the use of force occurred after he requested to speak to a supervisor, and Stout threatened to break his arm if he did not remove it from the tray slot. Based on these allegations, Darr claims that Stout violated his Eighth Amendment right to be free from cruel and unusual punishment, as well as his Fourteenth Amendment rights to equal protection and due process.

In addition to suing Stout in his individual and official capacities under § 1983, Darr's Complaint names Clarke and White as defendants in their official capacities. At the time of the events giving rise to this action, Clarke was the Director of the Virginia Department of Corrections, ("VDOC"), and White was the Warden of Augusta. In support of his claim against Clarke, Darr states that he "feels that . . . Clarke has some responsibility" for Stout's actions and "some liability" for the alleged violation of the Eighth Amendment. (Docket Item No. 1 at 5.) Darr seeks declaratory and injunctive relief, in addition to compensatory and punitive damages.

In response to a question on the form Complaint, Darr indicates that he filed a grievance regarding the facts of the Complaint. He describes the result of the grievance as "Expired Filing Period." (Docket Item No. 1 at 3.) The Complaint is accompanied by several exhibits, including a Written Complaint signed by Darr on February 5, 2022; an Investigation Completion Notice addressed to Darr on March 1, 2022, which advised him that an investigation had been conducted concerning the allegations made on February 5, 2022; Offender Requests submitted in February and March 2022; and a Regular Grievance signed on January 11, 2023, which was rejected as untimely since it was not submitted within 30 days of the original incident.

In his response in opposition to the Motion, (Docket Item No. 15) ("Response"), Darr alleges that he communicated with several people regarding Stout's actions, including Clarke and White. Darr alleges that White told him that the incident "was being special investi[gated] in Richmond" and that Darr "need not . . . go any further reaching out to anyone." (Docket Item No. 1 at 6.)

2

## *II. Analysis*

In the Motion, the defendants argue that Darr's Complaint should be dismissed under Federal Rules of Civil Procedure Rule 12(b)(6) for failing to state a claim upon which relief may be granted. A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. The complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action," and it must allege enough facts to raise a right to relief above the speculative level. *Twombly*, 550 U.S. at 555.

When a complaint is filed by a plaintiff proceeding pro se, it must be liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Pro se complaints are held to a less stringent standard than those drafted by attorneys. *See Erickson*, 551 U.S. at 94. "Principles requiring generous construction of pro se complaints are not, however, without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). A pro se complaint "must still 'state a claim to relief that is plausible on its face.'" *Sakyi v. Nationstar Mortg., LLC*, 770 F. App'x 113, 113 (4th Cir 2019) (quoting *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014)).

### A.    Exhaustion

The defendants argue that the Complaint should be dismissed in its entirety on the basis that Darr failed to properly exhaust his administrative remedies. They contend that the Complaint "shows that Plaintiff did not comply with the deadline requirements of VDOC's grievance procedures." (Docket Item No. 11 at 4.)

The Prison Litigation Reform Act of 1995, ("PLRA"), "mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." *Ross v. Blake*, 578 U.S. 632, 635 (2016) (quoting 42 U.S.C. § 1997e(a)). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). The Supreme Court has held that "proper exhaustion of administrative remedies is necessary" and that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 83, 91 (2006).

The Supreme Court also has made clear, however, that inmates "need not exhaust remedies if they are not 'available,'" *Ross*, 578 U.S. at 636, and that "inmates are not required to specially plead or demonstrate exhaustion in their complaints," *Jones*, 549 U.S. at 216. Instead, "failure to exhaust is an affirmative defense" that must be raised by defendants. *Jones*, 549 U.S. at 216. "It follows, therefore, that a motion to dismiss filed under Federal Rule of Procedure 12(b)(6), which tests the sufficiency of the complaint, generally cannot reach the merits of an affirmative defense," such as the defense of failure to exhaust administrative remedies. *Goodman v. PraxAir, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007). It is only "in the relatively rare circumstances where facts sufficient to rule on an affirmative

4

defense are alleged in the complaint" that "the defense may be reached by a motion to dismiss filed under Rule 12(b)(6)." *Goodman*, 494 F.3d at 464. "This principle only applies, however, if all facts necessary to the affirmative defense clearly appear on the face of the complaint." *Goodman*, 494 F.3d at 464. (internal quotation marks, brackets, and citation omitted); *see also Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2017) (explaining that a court "may sua dismiss a complaint when the alleged facts in the complaint, taken as true, prove that the inmate failed to exhaust his administrative remedies," but that such cases are "rare"). "And even to succeed in these rare circumstances, the defendant must show 'that the plaintiff's potential [response] to the affirmative defense [is] foreclosed by the allegations in the complaint.'" *L.N.P. v. Kijakazi*, 64 F.4th 577, 586 (4th Cir. 2023) (first alteration in original) (quoting *Goodman*, 494 F.3d at 466).

Here, it is not apparent from the face of the Complaint that Darr failed to satisfy the PLRA's exhaustion requirement. Although Darr acknowledges that the Regular Grievance that he submitted in January 2023 was rejected as untimely, it is unclear whether the grievance process was actually available to Darr during the 30-day period following the use of force on February 5, 2022, or whether he, "through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008); *see also Ross*, 578 U.S. at 644 (identifying circumstances that render administrative remedies unavailable, such as "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation"); *Custis*, 851 F.3d at 361 (concluding that an inmate's complaint, standing alone, did not make it apparent whether the inmate exhausted, or failed to exhaust, available administrative remedies, where the inmate alleged that his grievance was dismissed as untimely). This is especially true in light of Darr's Response to the Motion, which suggests that

he may have relied to his detriment on White's instructions indicating that he need not take any further action since a formal investigation had been initiated. *See Toomer v. BCDC*, 537 F. App'x 204, 206–07 (4th Cir. 2013) (concluding that prison officials were not entitled to summary judgment on the issue of exhaustion since the inmate received instructions that "essentially diverted [him] from filing a Step III grievance"); *Brown v. Croak*, 312 F.3d 109, 112–13 (3d Cir. 2002) (concluding that the issue of exhaustion could not be decided as a matter of law in light of the inmate's assertion that he was induced to believe that he must wait for an investigation to be completed before filing a formal grievance). The defendants have not shown that Darr's potential response to the affirmative defense of exhaustion is "foreclosed by the allegations in the complaint." *Goodman*, 494 F.3d at 466.

For these reasons, this case does not fall within the "relatively rare" category of cases in which the affirmative defense of exhaustion may be resolved at the Rule 12(b)(6) stage of the proceedings. *Goodman*, 494 F.3d at 464. Accordingly, to the extent that the defendants seek dismissal for failure to exhaust administrative remedies, the Motion will be denied.

### B.   *Official-Capacity Claims*

The defendants next move to dismiss any claims asserted against them in their official capacities. As noted above, the Complaint names Stout as a defendant in his individual and official capacities, and it names Clarke and White as defendants only in their official capacities. For the following reasons, the official-capacity claims will be dismissed for failure to state a claim upon which relief may be granted.

Whereas "[p]ersonal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law," *Kentucky v. Graham*, 473 U.S. 159, 165 (1985), "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent," *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978). "[T]he suit is 'treated as a suit against the entity,' which must then be a 'moving force' behind the deprivation." *King v. Rubenstein*, 825 F.3d 206, 223 (4th Cir. 2016) (quoting *Graham*, 473 U.S. at 166 and *Polk County v. Dodson*, 454 U.S. 312, 326 (1981)). In particular, "the entity's policy or custom must have played a part in the violation of federal law." *Graham*, 473 U.S. at 166 (internal quotation marks and citations omitted).

Darr has not plausibly alleged that an official policy or custom played a role in the constitutional deprivations of which he complains. At most, Darr alleges that Stout used excessive force against him on a single occasion and that Clarke and White had supervisory roles at the time of the incident. "It is well settled that 'isolated incidents' of unconstitutional conduct by subordinate employees are not sufficient to establish a custom or practice for § 1983 purposes." *Lytle v. Doyle*, 326 F.3d 463, 473 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 220 (4th Cir. 1999)). "Rather, there must be 'numerous particular instances' of unconstitutional conduct in order to establish a custom or practice." *Lytle*, 326 F.3d at 473 (quoting *Kopf v. Wing*, 942 F.2d 265, 269 (4th Cir. 1991)). Because the Complaint does not allege facts suggesting that an official policy or custom played a part in the alleged violations of federal law, it fails to state a claim against the defendants in their official capacites.\*

---

\* To the extent that the Complaint could be liberally construed as seeking relief against Clarke and White under a theory of supervisory liability, the claims against these defendants fare

Additionally, any claim for damages against the defendants in their official capacities is precluded by the Eleventh Amendment, which "generally bars actions for damages against unconsenting States." *Fauconier v. Clarke*, 966 F.3d 265, 279 (4th Cir. 2020). "Moreover, whereas 42 U.S.C.§ 1983 permits suit against 'every person' who deprives an individual of his or her rights under color of state law, neither States nor state officials acting in their official capacities constitute 'persons' within the meaning of the statute when sued for monetary relief." *Fauconier*, 966 F.3d at 279-80. Thus, any claim for damages against the defendants in their official capacities is subject to dismissal on these grounds.

### C. Fourteenth Amendment Claim

The defendants also have moved to dismiss Darr's claim that his "Fourteenth Amendment rights to equal protection of the law and due process were violated when . . . Stout slammed his arm in [the] tray slot." (Docket Item No. 1. at 4.) The court agrees with the defendants that the Complaint does not state a viable claim for relief under the Fourteenth Amendment.

---

no better. "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676. In other words, "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct," and a supervisor's "mere knowledge" that a subordinate engaged in unconstitutional conduct does not suffice. *Iqbal*, 556 U.S. at 677. Instead, a plaintiff must show that "each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 677. Darr's Complaint does not satisfy this requirement with respect to Clarke or White. Consequently, it fails to state a claim against either defendant under a theory of supervisory liability. *See King v. Riley*, 76 F.4th 259, 269–70 (4th Cir. 2023) ("Nowhere does [King] identify how each defendant violated the constitution. This is a prerequisite to a supervisory-liability claim . . . . So King's supervisory-liability claim fails.").

8

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "It is 'essentially a direction that all persons similarly situated should be treated alike.'" *Grimm v. Gloucester Cnty. Sch. Bd.*, 972 F.3d 586, 606 (4th Cir. 2020) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). "In order to survive a motion to dismiss an equal protection claim, a plaintiff must plead sufficient facts to demonstrate plausibly that he was treated differently from others who were similarly situated and that the unequal treatment was the result of discriminatory animus." *Equity in Athletics, Inc. v. Dep't of Educ.*, 639 F.3d 91, 108 (4th Cir. 2011).

Darr has not alleged facts sufficient to satisfy either element. He does not allege that he was treated differently from others who were similarly situated or that any disparity in treatment resulted from "intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). Thus, the Complaint fails to state a claim for relief under the Equal Protection Clause.

Finally, the court concludes that the alleged use of excessive force by Stout does not give rise to a separate claim for violation of Darr's right to due process under the Fourteenth Amendment. Claims of excessive force by convicted prisoners are governed by the Eighth Amendment's prohibition against cruel and unusual punishment. *See Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015). The defendants do not challenge the sufficiency of Darr's allegations with respect to his Eighth Amendment claim against Stout in his individual capacity. It is well settled that "if a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due

process." *United States v. Lanier*, 520 U.S. 259, 272 n.7 (1997) (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989)). The same reasoning applies to any claimed violation of procedural due process arising from the use of force. *See Rivera v. Mathena*, 795 F. App'x 169, 177 n.6 (4th Cir. 2019) (declining to reach an inmate's procedural due process claim since he could "obtain the entirety of the relief that he [sought] under his Eighth Amendment conditions of confinement claim"). Therefore, Darr's claim that the use of force violated his right to due process will be dismissed.

### III. Conclusion

For the reasons stated, the court will grant in part and deny in part the defendants' Motion. The case will proceed solely on the Eighth Amendment claim of excessive force asserted against Stout in his individual capacity. All other claims will be dismissed for failure to state a claim upon which relief may be granted.

An appropriate Order will be entered.

**ENTERED**:  This 14th day of November, 2023.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE